## Edwin M. Levin, Appellee, v. Frieolin Pabst, Appellant.

### Gen. No. 30,867.

1. LANDLORD AND TENANT—*sufficiency of service of 60-day notice under provisions of lease.* Under a lease providing that the "lessee shall vacate the above-mentioned premises upon a 60-day notice in writing, at any time during the term of the lease," the notice contemplated is sufficiently served by leaving the same with some person over the age of twelve years, residing upon the premises, in view of Cahill's St. ch. 80, ¶ 10.

2. LANDLORD AND TENANT—*sufficiency of 60-day notice under provisions of lease.* Where a lease provided that the "lessee shall vacate the above-mentioned premises upon a 60-day notice in writing, at any time during the term of the lease," a notice was sufficient, although not in all respects well drawn, where it explicitly stated that the landlord had elected to terminate the tenancy and demanded possession as of a date 60 days from the date of the notice.

3. FRAUD AND DECEIT—*failure to read lease before signing same as precluding defense of fraud in procuring signature, in action of forcible detainer based upon provisions thereof.* No defense to an action of forcible detainer to recover possession of leased premises brought after expiration of 60 days from the service of a 60-day notice of intention to terminate the tenancy pursuant to the terms of a written lease, is afforded by proof that the tenant, after having occupied the premises under an oral lease from year to year for 15 years was induced by the landlord to sign a written lease containing the provision for termination on such notice, where he signed such lease without taking the opportunity provided to

read it, although in so doing he relied upon the assurances of the landlord, with whom he had long been on friendly terms, that his occupancy would not be disturbed.

Appeal by defendant from the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1926. Affirmed. Opinion filed June 2, 1926. Rehearing denied June 15, 1926.

GUSTAV E. BEERLY, for appellant; MACK, LOWES & LEOPOLD, of counsel.

LEVISOHN & LEVISOHN, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

On October 5, 1925, plaintiff brought an action of forcible detainer against the defendant to recover possession of certain premises in the city of Chicago, known as No. 540 Surf Street. There was a trial before a judge and a jury and at the close of all the evidence the court, on motion of plaintiff, instructed the jury to return a verdict in plaintiff's favor, which was accordingly done. Judgment was entered on the verdict and the defendant appeals.

The record discloses that the defendant had occupied the premises in question for a period of about 20 years; that, during the last 15 years of that period, he had occupied the premises as tenant of a Mrs. Rogers, under an oral lease, she being the owner of the premises. This was a year to year tenancy and expired on the 30th of April of each year. The evidence further shows that on or about the 20th of June, 1925, Mrs. Rogers, who lived for many years next door to the premises in question, informed the defendant that she desired to see him and he went to her home. The defendant then testified that she then told him "that she was going away for a long trip, in fact, on a very long trip, and was likely to be gone for the balance of the year, and that she was going to

turn her real estate affairs over to a certain agent by the name of Lasser, and that I should pay my rent to him. She asked me to come over once more, but either in the evening or very early in the morning, that she was going to give me something. I went over and after some more nice talk she handed me a paper, and said, 'here is a lease, you can be perfectly safe' ''; that she also gave him a copy of it and he took both of them back to his home, which was next door, signed the lease without having read it and returned it to Mrs. Rogers; that he kept the copy but had not read it. He further testified or offered to testify that Mrs. Rogers' husband was a physician and that the two families visited back and forth for many years, and that Mrs. Rogers told the defendant that he could continue to occupy the house in question as long as Dr. Rogers practiced in Chicago, and that the doctor was still practicing in the city.

The evidence further shows that on or about the 20th of July, 1925, Mrs. Rogers assigned her interest in the lease to Hugh M. Garden of which the defendant was notified and that Garden on the first of August, 1925, assigned his interest in the lease to plaintiff Levin, defendant also being given notice of this fact and that he paid his rent after the assignments had been made to Garden and later to Levin. The evidence further shows that on the 4th of August, 1925, plaintiff served a notice on the defendant, which was addressed to the defendant and signed by plaintiff. It stated that plaintiff had elected to terminate defendant's tenancy of the premises in question and continued as follows: ''And You Are Hereby Further Notified, To quit and deliver up the possession of said premises to me at the end of the present term, provided sixty days intervene, otherwise at the end of the sixty-day term, which commences next after the service of this notice. You are therefore hereby accordingly required to surrender the possession of the

within premises to me on the 4th day of October, 1925.
Dated this 4th day of August, A. D. 1925." On Sep-
tember 30th, defendant sent plaintiff his check for
$200 in payment of the October rent. Plaintiff re-
turned this check to the defendant and he later re-
turned it to plaintiff together with a letter. This
letter was dated October 2nd, 1925, and stated: "You
are evidently misinformed regarding my tenancy of
the premises which I now occupy. I have a perfectly
good lease until May 1st and under my agreement it
is not subject to any cancellation before termination.
I am enclosing my check for $200 for the October
rent."

As stated, plaintiff brought suit October 5, 1925,
and on the trial of the case tendered the $200 check
to the defendant, but he refused to receive it. The
evidence further shows that the notice of August 4
was not served personally on defendant, but there was
an affidavit attached to the notice, made by plaintiff,
wherein he swore that he served the notice on defend-
ant on the 4th of August, 1925, by leaving a copy
thereof with one Mary Doe, "A person above the age
of twelve years, residing on or being in charge of the
premises." Plaintiff also testified in this respect that
prior to the time he left the notice, he had called two
or three times but was unable to find the defendant
at home; that between 5 and 8 o'clock in the evening
of August 4, he went to defendant's residence, called
for the defendant, found he was not at home and that
he gave the notice to the woman who came to the door;
that he did not know her name, but that she was over
twelve years of age; that she said Mr. Pabst was not
there; that she did not know when he would be home
and that he did not ask her what her name was, but
gave her a copy of the notice and told her to give it
to Mr. Pabst.

The lease was on a printed blank and contained a
provision in typewriting, written in a blank space.

This provision is as follows: "It is further understood and agreed that lessee shall vacate the above mentioned premises upon a sixty-day notice in writing, at any time during the term of this lease." It is by virtue of this provision that plaintiff claims the right to terminate the lease. This is substantially all of the evidence in the record.

The defendant contends that the notice whereby it was sought to terminate the tenancy was not properly served because, since the provision in the lease above quoted did not specify the kind of notice that should be given in case it was sought to terminate the lease, the law required that the notice be served personally but that this was not done. A further contention, in this regard, is that the notice is insufficient even if it was given under the theory that the Landlord and Tenant Act [Cahill's St. ch. 80] or the Forcible Entry and Detainer Act [Cahill's St. ch. 57] applied. And it is finally said the notice is ambiguous and insufficient.

We think the service of the notice was sufficient under the provisions of section 10 of the Landlord and Tenant Act [Cahill's St. ch. 80, ¶ 10]. That section provides: "Any demand may be made or notice served by delivering a written or printed, or partly written and printed, copy thereof to the tenant, or by leaving the same with some person above the age of twelve years, residing on or in possession of the premises." We think this section applies, although there was no default in the payment of rent, because it points out a method whereby a landlord may serve notice on his tenant concerning the property occupied or rented by the tenant. It is not limited to those cases where there has been a default in the payment of rent or the like. The notice is not well drawn, as defendant contends, but we think it sufficient, because it explicitly states that plaintiff had elected to terminate defendant's tenancy of the premises in question

and demands possession by the 4th of October, 1925. We think the notice was such that plaintiff could well understand the demand made upon him and therefore it was sufficient.

The defendant further contends that a fraud was perpetrated upon him by Mrs. Rogers in securing his signature to the lease and that he was excused from reading the lease because of the friendship existing between the two families who had been neighbors for 15 years; that it was a mere trick on her part to secure the termination of the lease before April 30, 1926, and a number of cases are cited, which defendant contends sustain his contention, that such fraud may be taken advantage of in an action at law. We think the law in this State is contrary to defendant's contention. In discussing this question, the Supreme Court in *Papke v. G. H. Hammond Co.*, 192 Ill. 631, 635, said: "There may be fraud, which inheres in the execution of the instrument; that is to say, where the signer of the instrument is deceived into signing it by the belief that he is signing something other than that which he does really sign. Fraud in the execution of the instrument is practiced, where the instrument is misread to the party signing it, or where there is a surreptitious substitution of one paper for another, or where, by some other trick or device, a party is made to sign an instrument which he did not intend to execute. In such cases, the nature of the instrument signed is not fully understood by the party signing it." And the court there further said that where there was such fraud it may be shown in an action at law, but as to other kinds of fraud mentioned in that case, the court pointed out that equity must be resorted to for relief. In the instant case we think there was no such fraud as may be interposed as a defense in a suit at law within the ruling laid down in the *Papke* case. The evidence shows that plaintiff called on Mrs. Rogers at her request and that she told him she was

going to leave and be away for a long time and she requested him to sign the lease which she then handed to him, together with the copy. The defendant then took the two papers to his home, signed the original and returned it to Mrs. Rogers, keeping the copy. If he failed to read it, he cannot be relieved from its terms. He was an educated man, and according to his own testimony there was certainly no such fraud as would warrant this court in reversing the judgment appealed from.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

THOMSON, P. J., and TAYLOR, J., concur.